**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| NOVLETT MCKAY, LAUREN ANDERSON, and MOHAMMED ZEKRAOUI, *on behalf of themselves and all similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA DEBT RECOVERY, LLC d/b/a GENESIS,<br><br>Defendant. | ) | Civil Action No. 1:25-cv-520 |

## CLASS ACTION COMPLAINT

Plaintiffs Novlett McKay, Lauren Anderson, and Mohammed Zekraoui (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, file this Class Action Complaint against Defendant Columbia Debt Recovery, LLC d/b/a Genesis ("Genesis" or "Defendant"). In support, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages, costs, and attorneys' fees for GENESIS's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and actual, statutory, and punitive damages, costs and fees for its violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

2. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

3. Congress recognized that abusive debt collection practices cause harm to consumers by contributing "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

4. The FDCPA, therefore, "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

5. In this case, Genesis has sought to collect from Plaintiffs several fees related to their former apartment units that were not authorized under their lease agreements or the relevant state laws.

6. For example, when Ms. McKay moved out of her apartment at Newport Village in Alexandria, Virginia, she was assessed fees for broken kitchen cabinets that were not broken when she moved out (of which she had taken pictures as proof), a broken oven door that she had specifically requested that Newport Village repair and that it elected to leave broken, and flood damage for sewer buildup that was Newport Village's sole responsibility. Newport Village referred these charges to Genesis for collection, and Genesis subsequently sent correspondence to Ms. McKay seeking to collect these unjustified and unauthorized charges. Genesis also added 6% interest fee to the charges, which was not permitted by law or Ms. McKay's lease.

7. Similarly, when Ms. Anderson and Mr. Zekraoui moved from Colorado to Virginia in December 2023, their landlord sought to collect an "early termination fee," cleaning fees, pest control fees, and a "final utility setup admin fee" that were invalid under both her lease and Colorado law. Genesis also assessed interest on these debts without the authority to do so.

8. Adding to its harmful conduct, Genesis also reported the inaccurate amount of past-due debt on Plaintiffs' credit reports. When they disputed these amounts and provided evidence

that the fees were improper, Genesis ignored those terms. It instead chose to perform a perfunctory "review" of its internal systems and reiterated the same inaccurate information back to the credit bureaus. As a result, Plaintiffs' credit scores have plummeted.

9. Plaintiffs are not alone in this practice. As discovery will confirm, Genesis collects similar interest from thousands of consumers nationwide that are not required under the express terms of the consumers' pro forma lease agreements, as well as controlling state law. As a result, consumers have made thousands in unnecessary payments and have suffered other damages from Genesis's attempted collection and collection of these unlawful debts. Genesis has in turn aided landlords across the country in collecting termination fees and other improper so-called "junk fees" that have become endemic in recent years.

10. Faced with this widespread unfair and deceptive conduct, Plaintiffs bring this case under the FDCPA on behalf of themselves and a class of similarly situated consumers. They also bring individual claims under the FCRA for Genesis's failure to reasonably investigate and respond to their disputes regarding its inaccurate credit reporting.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 15 U.S.C. § 1681(p).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division, where Plaintiffs each reside, or resided during the relevant period, and in which Genesis's debt collection activity occurred.

## PARTIES

13. Ms. McKay is a natural person who resides in the District of Columbia and previously rented the apartment giving rise to the disputed debt in this District and Division. She

is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a. She is also a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

14. Ms. Anderson is a natural person residing in this District and Division. She is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a. She is also a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

15. Mr. Zekraoui is a natural person residing in this District and Division. He is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a. He is also a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

16. Defendant Columbia Debt Recovery, LLC d/b/a Genesis is a Washington limited liability company with its principal place of business in Everett, Washington. Genesis is a "debt collector" as defined by the FDCPA, including because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another—for example, Plaintiffs' landlords and the other landlords of the putative class members. 15 U.S.C. § 1692a. Genesis is also a "furnisher" as governed by the FCRA.

17. Additionally, Genesis is a debt collector as defined by the FDCPA because its principal purpose as a business is the collection of debts, and it uses instrumentalities of interstate commerce including the mail to carry out that purpose. 15 U.S.C. § 1692a. Genesis's website states that it "specializes in collections for the multi-family industry [i.e., landlords]"[1] Genesis also claims to "provide[] organizations the ability to take back control of their delinquent accounts [i.e., debts]." Genesis does not advertise or describe any business purposes other than the collection of debts for landlords.

[1] https://www.genesiscred.com/#about.

## FACTS

***Debt Collectors Cannot Collect Debts Not Expressly Authorized by the Agreement Creating Them***

18. The FDCPA provides that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

19. Among the "unfair or unconscionable" conduct that the FDCPA prohibits is "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

20. Interpreting that provision, the Fourth Circuit recently ruled that debt collectors cannot lawfully collect fees that were not set forth in the agreement that otherwise created the subject debt (*e.g.*, a lease). *See Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022) ("Nothing we have said prevents Carrington from extending this payment option to consumers. If it does so, however, it must do so without the imposition of a statutorily prohibited convenience fee.").

21. The Consumer Financial Protection Bureau has since confirmed the same. CFPB Advisory Opinion, *Debt Collection Practices (Regulation F); Pay-to-Pay Fees* (June 2022), *available at* https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_convenienc efees_advisory-opinion_2022-06.pdf ("The Consumer Financial Protection Bureau (CFPB) issues this advisory opinion to affirm that [§ 1692f] prohibits debt collectors from collecting pay-to-pay or 'convenience' fees, such as fees imposed for making a payment online or by phone, when those fees are not expressly authorized by the agreement creating the debt or expressly authorized by law.").

22. Despite the clear law and guidance on this issue, Genesis has continued to collect and attempt to collect interest, early termination fees, and other fees that are not permitted by consumers' lease agreements or under state law. This is precisely what occurred with Plaintiffs here.

***Ms. McKay***

23. Ms. McKay lived in an apartment at Newport Village in Alexandria, Virginia from 2018 to 2022. She signed her last lease with Newport Village in 2021.

24. Ms. McKay's lease was a form lease prepared by the National Apartment Association for use by landlords across the country.

25. Ms. McKay moved out of her apartment in 2022. At the time she moved out, she took photographs of the apartment, including the kitchen cabinets, which were in good repair. She also captured the condition of the oven door, which she had repeatedly requested that her landlord repair but was left unfixed at the time of her moveout.

26. Ms. McKay believed that she had paid off all outstanding debts owed to her landlord and moved on with her life. Indeed, her online portal with Newport Village at the time of her move out showed that she had a credit of $2,385.59.

27. Unbeknownst to her, however, her landlord had charged her several fees and other charges that were both unauthorized under her lease and unlawful under Virginia law.

28. Specifically, in the summer of 2024, Ms. McKay received correspondence from Defendant claiming that she owed $1,547.24 to Newport Village.

29. With no reason to believe that she owed anything to her former landlord, Ms. McKay sent a letter to Genesis disputing the debt and asking that it validate the amounts owed.

30. In response, on August 14, 2024, Genesis sent a letter to Ms. McKay claiming that she owed $45.00 for damaged cabinets, $399.20 to repair the oven that she had asked the landlord

to fix several times. Genesis also claimed that Ms. McKay owed $127.22 in interest, which was compounding at 6% APR.

31. But Ms. McKay's form lease did not authorize these fees, nor were they otherwise permitted under Virginia law.

32. To the contrary, nowhere in Ms. McKay's lease was Genesis authorized to assess interest.

33. Ms. McKay's lease also stated that the landlord would repair any damage submitted through a request on the online portal, which Ms. McKay had submitted for the necessary repairs to her oven years prior to leaving in October 2019, but that the landlord chose to ignore.

34. Similarly, although the landlord charged Ms. McKay for the cost of repairing flooding from a backed-up sewer line, that was its sole responsibility under the warranty of habitability, and it could not charge Ms. McKay for that cost.

35. Despite the unauthorized and unlawful fees charged to Ms. McKay, Defendant attempted to collect these amounts from her and, as debt collectors often do to obtain payment, started reporting the amounts as a delinquent account on her credit reports.

36. As a result of this inaccurate reporting, Ms. McKay's credit score plummeted, threatening her secret-level security clearance that she needed to maintain her employment and her ability to obtain and maintain credit. During the relevant period, Ms. McKay was also denied increased credit, had her credit limits on other lines of credit reduced or closed, and was denied new lines of credit. Upon information and belief, most, if not all, of these adverse credit decisions were at least partly attributable to Genesis's derogatory reporting.

37. Faced with the direct financial and vocational harm caused by Genesis's reporting, in August 2024, Ms. McKay sent written dispute letters to Equifax, Experian, and Trans Union.

In those letters, she explained that the amount reported by Genesis as past-due included a improper fees and charges, and she provided copies of her apartment ledger showing the improper fee charges, a copy of her lease that provided objective evidence that such charges were not authorized, photographs of her kitchen cabinets showing that they were in good condition at the time of move out, a copy of her request to repair the oven door submitted in October 2019 (and a photograph of the oven), photographs of the flooding in her apartment caused by the sewage backup and the subsequent efforts to remediate the damage, and a screenshot of her online portal with Newport Village at the time of her move out showing that she had a positive balance of over $2,000.

38. Upon information and belief, Equifax, Experian, and Trans Union forwarded Ms. McKay's disputes to Genesis.

39. Genesis understood Ms. McKay's disputes.

40. Upon information and belief, Genesis did not review the lease agreement, photographs, screenshots, tenant ledger, or other correspondence with Ms. McKay to determine whether it mistakenly reported amounts that she did not in fact owe under the terms of the lease.

41. Instead, Genesis simply performed a cursory review of the information in its internal system and reiterated the inaccurate information back to the credit reporting bureaus who then parroted the information on Ms. McKay's credit reports.

42. Consequently, Ms. McKay's credit reports continued to show the inaccurate amount of past-due debt allegedly owed by Ms. McKay to Newport Village.

43. On October 2024, Ms. McKay sent follow-up disputes to Equifax, Experian, and Trans Union. She also sent a debt dispute letter directly to Genesis. In these disputes, she again explained that the amounts reported by Genesis as past due were inaccurate because they included

fees and interest that she was not required to pay under her lease or Virginia law. Ms. McKay again enclosed the same documents and attachments she had included with her first dispute letters.

44. Upon information and belief, Equifax, Experian, and Trans Union forwarded Ms. McKay's follow-up disputes to Genesis.

45. Genesis understood Ms. McKay's follow-up disputes.

46. Upon information and belief, Genesis did not review the dispute letters or attachments, or its other correspondence with Ms. McKay, to determine whether it mistakenly reported amounts that she did not in fact owe under the terms of the lease.

47. Instead, Genesis simply performed a cursory review of the information in its internal system and reiterated the inaccurate information back to the credit reporting bureaus who then parroted the information on Ms. McKay's credit reports.

48. Consequently, Ms. McKay's credit reports continued to show the inaccurate amount of past-due debt.

49. As a result of Genesis's failure to reasonably investigate and correct its inaccurate reporting, Ms. McKay's credit scores from all three bureaus plummeted, which now threatens her security clearance that is subject to reinvestigation this year. She also continues to experience adverse credit decisions, in addition to her emotional damages and distress from Genesis's inaccurate reporting and attempted debt collection.

***Ms. Anderson and Mr. Zekraoui***

50. Ms. Anderson and Mr. Zekraoui lived at an apartment in Englewood, Colorado from February 2023 to December 2023. They executed a lease with their landlord—CH Realty IX-MF Denver The Marks, LP ("The Marks")—in February 2023.

51. The lease was a form lease prepared by the National Apartment Association for use by landlords across the country.

52. Ms. Anderson and Mr. Zekraoui moved from Colorado to Virginia in December 2023 and ended their lease early.

53. Ms. Anderson and Mr. Zekraoui believed that they had paid off all outstanding debts owed to their landlord.

54. This is because they received electronic notifications of the amounts owed each month and have proof that they paid each of those amounts in full.

55. Unbeknownst to them, however, The Marks had charged them over $5,000 fees and other charges that were both unauthorized under their lease and unlawful under Colorado law.

56. Specifically, in the summer of 2024, Ms. Anderson and Mr. Zekraoui received correspondence from Defendant claiming that they owed $5,597.17 to their former landlord.

57. With no reason to believe that they owed anything, Ms. Anderson and Mr. Zekraoui sent letters to Genesis disputing the debt and asking that it validate the amounts owed.

58. In response, on January 8, 2025, Genesis sent letters to Ms. Anderson and Mr. Zekraoui claiming that they owed a $2,373.00 "early termination fee," as well as cleaning fees, pest control fees, and a "final utility setup admin fee." Genesis also claimed that they owed $251.50 in interest as of the date of the letter.

59. But Ms. Anderson's and Mr. Zekraoui's form lease did not authorize these fees, or they were otherwise impermissible under Colorado law.

60. To the contrary, nowhere in their lease did the landlord impose a "cleaning fee," or "final utility setup admin fee." Nor did the lease authorize the assessment of interest.

61. Ms. Anderson's and Mr. Zekraoui's form lease agreements also did not require payment of an "early termination fee." Instead, under the terms of the lease, they could elect to pay a "buy-out fee" of $2,373.00—which is the same thing as the "early termination fee"—in lieu

of The Marks seeking damages in court. In other words, if they did not pay the fee, the only recourse for The Marks was to seek its actual damages in court. The early termination or "buy-out" fee could never constitute a valid and collectible debt under the terms of the lease.

62. Moreover, although they were charged a monthly pest control fee, that fee was improper under Colorado law, as the landlord could not shift the burden for maintaining a pest-free apartment to its tenants. *See* Colo. Stat. § 38-12-503, 38-12-505(1)(b)(VIII) and (c).

63. Despite the unauthorized and unlawful fees charged to Ms. Anderson and Mr. Zekraoui, Defendant attempted to collect these amounts from them and, as debt collectors often do to obtain payment, started reporting the amounts as a delinquent account on their credit reports.

64. Ms. Anderson and Mr. Zekraoui did not want to hurt their credit rating, so they decided to make a payment on the debt of $100.00. However, because the Defendant was charging interest it did not lower the amount of the debt that was owed.

65. As a result of this inaccurate reporting, Ms. Anderson's and Mr. Zekraoui's credit scores plummeted, undermining their ability to obtain and maintain credit.

66. Faced with the direct financial harm caused by Genesis's reporting, in September and November 2024, Ms. Anderson and Mr. Zekraoui sent written dispute letters to Equifax, Experian, and Trans Union. In those letters, they explained that the unauthorized and duplicate fees and charges.

67. Upon information and belief, Equifax, Experian, and Trans Union forwarded Ms. Anderson's and Mr. Zekraoui's disputes to Genesis.

68. Genesis understood these disputes.

69. Upon information and belief, Genesis did not review the lease agreement, apartment ledgers, or other correspondence with Ms. Anderson or Mr. Zekraoui to determine whether it mistakenly reported amounts that they did not in fact owe under the terms of the lease.

70. Instead, Genesis simply performed a cursory review of the information in its internal system and reiterated the inaccurate information back to the credit reporting bureaus who then parroted the information on Ms. Anderson's and Mr. Zekraoui's credit reports.

71. Consequently, Ms. Anderson's and Mr. Zekraoui's credit reports continued to show the inaccurate amount of past-due debt allegedly owed to The Marks.

72. As a result of Genesis's failure to reasonably investigate and correct its inaccurate reporting, Ms. Anderson's and Mr. Zekraoui's credit scores from all three bureaus plummeted. Ms. Anderson and Mr. Zekraoui also suffered and continue to suffer emotional damages and distress from Genesis's inaccurate reporting and attempted debt collection.

***Genesis's Willfulness under the FCRA***

73. Genesis's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, Genesis acted in accordance with its intended procedures. In addition, Genesis prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

74. In addition, the willfulness of Genesis's FCRA violations can be established by, for example:

a. Congress enacted the FCRA in 1970, and Genesis has had over 50 years to become compliant;

b. Genesis is a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet, there is not contemporaneous evidence that Genesis determined that its conduct was lawful;

c. Genesis knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

d. Genesis voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. Genesis's FCRA violations were repeated and systematic;

f. Genesis had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

g. Genesis had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

**COUNT ONE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(Class Claim – Interest Charges)**

75. Plaintiffs incorporate each of the preceding allegations.

76. Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action on behalf of the following class of which they are each a putative class member:

> All persons: who were contacted by Genesis for payment of interest during the one-year period prior to the filing of this Complaint.

77. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Genesis's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

78. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Genesis is a debt collector; (2) whether Genesis violated § 1692f of the FDCPA by attempting to collect interest charges that were not provided for in the National Apartment Association's form lease(s) or other agreements; and (3) the appropriate amount of statutory damages given the frequency and persistence of Genesis's violations of § 1692f, the nature of Genesis's violations, and the extent to which Genesis's violations were intentional.

79. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

80. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiffs have retained experienced and competent counsel; they intend to continue to prosecute the action vigorously; they and their counsel will fairly and adequately protect the interests of the members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

81. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Genesis's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

82. Genesis violated § 1692f by attempting to collect and collecting interest from Plaintiffs and the putative class members that were not provided for under the terms of the putative class members' pro forma leases.

83. Upon information and belief, as a standard practice, Genesis collects interest on behalf of landlords even though no basis exists for such amounts under the terms of the putative class members' leases.

84. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

85. Plaintiffs and the putative class members suffered actual damages from Genesis's violations of § 1692f, including but not limited to the payment of unlawful amounts, credit reporting a higher amount that is owed due to the unlawfully assessed interest and emotional distress.

86. Due to Genesis's violations of § 1692f, Plaintiffs are entitled, individually and on behalf of the class, to their actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT TWO:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(Individual Claim by Plaintiffs Anderson and Zekraoui)**

87. Plaintiffs incorporate each of the preceding allegations.

88. Genesis violated § 1692f by attempting to collect and collecting pest fees from Plaintiffs Anderson and Zekraoui that were not permitted under Colorado law.

89. Under Colorado law, landlords have an obligation under the warranty of habitability to maintain pest-free premises for their tenants. They may not shift the burden to provide pest-free premises to the tenants, including through the imposition of pest fees.

90. Nonetheless, Genesis, on behalf of Plaintiffs Anderson and Zekraoui's landlord, attempted to collect and collected unlawful pest fees.

91. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

92. Plaintiffs Anderson and Zekraoui suffered actual damages from Genesis's violations of § 1692f, including but not limited to information injuries and emotional distress.

93. Due to Genesis's violations of § 1692f, Plaintiffs Anderson and Zekraoui are entitled to their actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT THREE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(Individual Claim by Plaintiff McKay)**

94. Plaintiffs incorporate each of the preceding allegations.

95. Genesis violated § 1692f by attempting to collect a membership fee and liability insurance fee from Plaintiff McKay that were not permitted under her lease agreement.

96. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

97. Plaintiff McKay suffered actual damages from Genesis's violations of § 1692f, including but not limited to emotional distress and damage to her credit.

98. Due to Genesis's violations of § 1692f, Plaintiff McKay is entitled to her actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT FOUR:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(Individual Claim by Plaintiff McKay)**

99. Plaintiffs incorporate each of the preceding allegations.

100. Genesis violated § 1692e by falsely representing in its collection letters that Plaintiff McKay owed fees and repair costs to her landlord.

101. Genesis falsely stated that Plaintiff owed amounts that she did not.

102. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

103. Plaintiff McKay suffered actual damages because of Genesis's violations of § 1692e.

104. Due to Genesis's violations of § 1692e, Plaintiff is entitled to her actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT FIVE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692f**
**(Individual Claim by Plaintiffs Anderson and Zekraoui)**

105. Plaintiffs incorporate each of the preceding allegations.

106. Genesis violated § 1692f by attempting to collect an "early termination fee," "cleaning fee" and "final utility setup admin fee" from Plaintiffs Anderson and Zekraoui that were not permitted under their lease agreements.

107. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692f.

108. Plaintiffs Anderson and Zekraoui suffered actual damages from Genesis's violations of § 1692f, including but not limited to emotional distress and damage to their credit.

109. Due to Genesis's violations of § 1692f, Plaintiffs Anderson and Zekraoui are entitled to their actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT SIX:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(Individual Claim by Plaintiffs Anderson and Zekraoui)**

110. Plaintiffs incorporate each of the preceding allegations.

111. Genesis violated § 1692e by falsely representing in its collection letters that Plaintiffs Anderson and Zekraoui owed fees and charges to her landlord that they did not owe.

112. Genesis falsely stated that Plaintiffs Anderson and Zekraoui owed amounts that they did not.

113. Upon information and belief, Genesis's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

114. Plaintiffs Anderson and Zekraoui suffered actual damages because of Genesis's violations of § 1692e.

115. Due to Genesis's violations of § 1692e, Plaintiffs Anderson and McKay are entitled to their actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT SEVEN:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(Individual Claims by Plaintiffs)**

116. Plaintiffs incorporate each of the preceding allegations.

117. On one or more occasion within the past two years, Genesis violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes.

118. When Plaintiffs disputed Genesis's inaccurate reporting with the credit bureaus, Genesis used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

119. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

120. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

121. Upon information and belief, the ACDV form is way that Genesis has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

122. Upon information and belief, the credit reporting agencies forwarded Plaintiffs' disputes to Genesis by ACDVs.

123. Genesis understood the nature of Plaintiffs' disputes when it received the ACDV forms.

124. Plaintiffs' disputes were bona fide as the account reported inaccurate derogatory information.

125. Upon information and belief, when Genesis received the ACDV forms containing Plaintiffs' disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

126. Upon information and belief, when Genesis receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is

information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

127. Because of Genesis's violation of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiffs suffered actual damages, including a reduced credit score, the inability to obtain refinanced credit, reputational damage, embarrassment, humiliation, stress, and other emotional distress.

128. Genesis's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiffs for punitive damages under 15 U.S.C. § 1681n. In the alternative, Genesis was negligent, entitling Plaintiffs to recovery under 15 U.S.C. § 1681o.

**COUNT EIGHT:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(Individual Claims by Plaintiffs)**

129. Plaintiffs incorporates the preceding allegations.

130. On one or more occasion within the past two years, Genesis violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

131. As Plaintiffs detailed in the previous Count, Genesis has elected to use the e-Oscar system for its FCRA disputes from the consumer reporting agencies.

132. When it received the ACDV forms from the credit-reporting agencies, Genesis did not review any of the information that Plaintiffs included in their disputes, which demonstrated that Genesis's reporting of the amounts allegedly owed to Plaintiffs' landlords was inaccurate.

133. If Genesis had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

134. Genesis also ignored the other information that the consumer-reporting agencies provided on Plaintiffs' disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

135. Genesis knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

136. Genesis does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

137. Genesis understood Plaintiffs' disputes and that they was disputing that they owed the fees and charges assessed under their lease agreements.

138. Despite this, Genesis did not update its incorrect and misleading reporting regarding the past-due amounts and continued to inaccurately attribute the full amount to Plaintiffs.

139. Plaintiffs' disputes were bona fide as the account reported inaccurate derogatory information.

140. Because of Genesis's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Plaintiffs suffered actual damages, including a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

141. Genesis's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

142. In the alternative, Genesis was negligent, entitling Plaintiffs to recover damages under 15 U.S.C. § 1681o.

**COUNT NINE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)**
**(Individual Claims by Plaintiffs)**

143. Plaintiffs incorporate the preceding allegations.

144. On one or more occasion within the past two years, Genesis violated 15 U.S.C. §§ 1681s-2(b)(1)(C) and (D) by publishing its representations within Plaintiffs' credit files without also including any notation at all that the account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

145. For example, Genesis failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field of at least one of the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

146. In addition, Genesis failed to add any other notation that Plaintiffs' accounts were disputed.

147. Furthermore, Genesis knew that Plaintiffs disputed the subject accounts through their direct and written dispute letters to the credit reporting agencies and to Genesis itself.

148. Plaintiffs' disputes were bona fide as the account reported inaccurate derogatory information.

149. Because of Genesis's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiffs suffered concrete and particularized harm, including but not limited to: a reduced credit score, the inability to refinance credit, reputational damage, embarrassment, humiliation, and other emotional distress.

150. Genesis's violations were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, Genesis was negligent, entitling Plaintiffs to recover against it under 15 U.S.C. § 1681o.

151. Plaintiffs are each entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Genesis under 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs demand judgment for actual, statutory, and punitive damages against Defendant; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS**

By: *_/s/ Kristi C. Kelly_*

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiffs*